UNITED STATES v. CURLEY et al.

(Circuit Court, D. Massachusetts. April 30, 1903.)

No. 1,949.

1. CONSPIRACY—FRAUD ON FEDERAL GOVERNMENT—CIVIL SERVICE EXAMINATION
   —IMPERSONATION OF ANOTHER—CONSTRUCTION OF STATUTES.
       Rev. St. § 5418 [U. S. Comp. St. 1901, p. 3666], punishes one who falsely makes or forges a writing "for the purpose of defrauding the United States," or who, for such purpose, presents at the office of any federal officer such false writing. Section 5440 [page 3676] punishes persons who conspire "to defraud the United States in any manner or for any purpose." Held, that a conspiracy by which one falsely impersonates

another at a civil service examination, and makes a declaration sheet for the latter, is within the statutes; pecuniary fraud not being alone intended.

## On Demurrer to Indictment.

This indictment is for conspiracy against the United States, and sets forth that Hughes, desiring to procure an appointment as letter carrier—a position in the classified civil service of the United States—and for the purpose of procuring the placing of his name on the list of persons eligible to appointment as letter carriers, and for the purpose of defrauding the United States, unlawfully agreed with Curley that the defendant Curley should falsely impersonate Hughes at a civil service examination, and do all acts required by the board of examiners, and sign the name of Hughes to such examination papers as should be delivered to Curley for examination while he should personate said Hughes; that Curley, in pursuance of said conspiracy, did falsely and unlawfully gain entrance to an examination, and, for the purpose of defrauding the United States, did falsely make a certain writing, known as a "declaration sheet." There are also allegations of presenting false papers to an officer of the United States.

The indictment contains three counts: The first, charging a conspiracy to defraud the United States under section 5440, Rev. St. [U. S. Comp. St. 1901, p. 3676]; the second, a conspiracy to commit an offense against the United States, to wit, an offense set out in section 5418 [page 3666], to falsely make a writing for the purpose of defrauding the United States; the third, a conspiracy to commit an offense against the United States, the offense being under section 5418, to wit, to present a false writing to an officer of the United States. The case is before the court on demurrer to the indictment.

Henry P. Moulton, U. S. Atty., and William P. Lewis, Asst. U. S. Atty.

Heman W. Chaplin, for defendants.

BROWN, District Judge (after stating the facts as above). The substance of the defendants' contention on demurrer is that the words "for the purpose of defrauding the United States," in section 5418, Rev. St. [U. S. Comp. St. 1901, p. 3666], and "to defraud the United States in any manner or for any purpose," in section 5440 [page 3676], signify only direct pecuniary fraud by depriving the United States of money or property. Upon consideration of section 5418, and upon similar facts, this point was decided contrary to the defendants' contention in United States v. Bunting (D. C.) 82 Fed. 883. The point was also considered, though not decided, by the Court of Appeals of the District of Columbia, in Palmer v. Calladay, June 18, 1901, reported in Washington Law Reporter, Vol. 29, No. 31, pages 532, 534, the opinion saying:

"It is claimed by appellee that to defraud the United States must mean to deprive it of money wrongfully, or of something of money value, and that a falsehood or trick by which its officers are deceived in the matter of selecting those who are to perform work for it could not be fraud against the United States. We do not agree to this proposition. The Civil Service Commission is a legal agency of the United States, created by act of Congress; and through it the President undertakes to find and appoint such persons as may best promote the efficiency of the civil service; and, to that end, regulations are prescribed, by means of which the age, health, character, knowledge, and ability for the branch of the service into which he seeks to enter, of each candidate, may be fully ascertained. If falsehoods are imposed upon the persons charged with the duty of ascertaining these qualifications, and made to take the place of facts, then the United States is defrauded—is deprived by

deceit of the knowledge justly due to its officers in the proper discharge of its business—and it is thereby liable to obtain a less efficient employee."

The United States also cites the instructions to the jury in the case of United States v. Bates (tried in the Supreme Court of the District of Columbia March, 1902) to a similar effect. The contention of the United States is that the word "defraud" not only signifies pecuniary fraud, but has the broad meaning of depriving another of a right by deception or artifice.

The procuring by fraudulent representations of an appointment to office, or other action of the United States authorities, might involve no pecuniary loss to the United States, and yet involve a deprivation of right more serious than pecuniary loss. There is force in the argument that these penal statutes are to receive a strict construction, and that, upon the construction for which the United States contends, the statutes become of the greatest generality and breadth, including in their terms, perhaps, matters otherwise specifically provided for by statute, and for which penalties are provided different from those of the statutes in question. Moreover, if we assume that it was the intention of Congress that sections 5418 and 5440 [U. S. Comp. St. 1901, pp. 3666, 3676] should cover frauds other than direct pecuniary frauds, such as frauds in the procurement of appointments, and frauds in the procurement of action by the United States authorities, there still might remain a doubt whether it was the intention to include fraudulent deprivations of rights like those conferred upon the United States by the civil service laws.

While I do not regard the question as free from doubt, the government's contention is supported by direct authority, and by an expression of the views of the judges of the Circuit Court of Appeals for the District of Columbia, and upon consideration of such arguments as have been presented, I am of the opinion that the demurrers should be overruled.